UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| ROBIN BETZ, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br>　vs.<br><br>CREDENCE RESOURCE MANAGEMENT LLC,<br><br>　　　　Defendant. | Case No.: 18-cv-279<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Robin Betz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a home internet services bill.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that Plaintiff engaged in a consumer transaction, Wis. Stat. § 421.301(13).

6. Defendant Credence Resource Management, LLC ("Credence") is a foreign corporation with its primary offices located at 17000 Dallas Parkway, Suite 204, Dallas, Texas 75248.

7. Credence is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Credence is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Credence is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *AT&T's October 18, 2017 Account Statement*

10. On or about October 18, 2017, AT&T mailed an account statement to Plaintiff regarding an alleged debt, allegedly owed to AT&T. A copy of this account statement is attached to this complaint as Exhibit A.

11. The debt referenced in Exhibit A was incurred for home internet services in Plaintiff's residence. Thus, the debt was incurred for personal, family or household purposes.

12. Exhibit A contains the following:

| Bill-At-A-Glance | |
|---|---|
| Previous Balance | $184.39 |
| Payment | $0.00 |
| Adjustments | $12.08CR |
| Past Due - Please Pay Immediately | $172.31 |
| New Charges | $0.00 |
| **Total Amount Due** | **$172.31** |
| Amount Due in Full by | Nov 08, 2017 |

2

Exhibit A.

13. Exhibit A states that Plaintiff's account received a $12.08 credit on or about October 18, 2017.

14. Exhibit A also contains a payment remittance slip, which contains the following:

> Return bottom portion with your check in the enclosed envelope.
> Payments may take 7 days to post.
>
> **DUE BY: Nov 08, 2017**   **$172.31**
>
> Past Due Charges - $172.31 - Please Pay Immediately
>
> at&t   Account Number ████2044-9
>
> Please include account number on your check.

Exhibit A.

15. Exhibit A states that, as of October 18, 2017, Plaintiff's AT&T account ending in 2044 had a balance of $172.31, with a "DUE BY" date of November 8, 2017.

16. Exhibit A also contains the following:

> **News You Can Use**
>
> **COLLECTION NOTICE**
> Balances not paid by the due by date, may be sent for further collections. You may be responsible for fees associated, as permitted by law. If you have any questions, please contact us at 800-288-2020.

Exhibit A.

17. Exhibit A states that, if Plaintiff's debt was "not paid by the due by date, [it] may be sent for further collections." Exhibit A.

18. Exhibit A, mailed on October 18, 2017, implies that Plaintiff's AT&T account would not be referred to a third-party debt collector as long as Plaintiff paid the account by November 8, 2018.

3

*Credence's October 20, 2017 Debt Collection Letter*

19. On or about October 20, 2017, Credence mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "AT&T Uverse" ("AT&T"). A copy of the letter is attached to this complaint as <u>Exhibit B</u>.

20. Upon information and belief, <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

21. Upon information and belief, <u>Exhibit B</u> is a form debt collection letter used by Credence to attempt to collect alleged debts.

22. Upon information and belief, <u>Exhibit B</u> is the first debt collection letter that Credence mailed to Plaintiff regarding the alleged debt referenced in <u>Exhibit B</u>.

23. The AT&T debt that Credence was attempting to collect in <u>Exhibit B</u> is the same AT&T account referenced in <u>Exhibit A</u>.

24. Upon information and belief, Credence and AT&T work in a scripted process to collect AT&T debts such as Plaintiff's.

25. Upon information and belief, when <u>Exhibit B</u> was mailed, Credence was fully aware of the contents and representations in <u>Exhibit A</u>.

26. Upon information and belief, Credence is fully aware that AT&T sends account statements in the form of <u>Exhibit A</u> to consumers around the same time Credence sends letters in the form of <u>Exhibit B</u>.

27. <u>Exhibit B</u> contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

4

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that this debt, or any portion thereof, is disputed this office will obtain verification of the debt or a copy of a judgment and mail you a copy of such verification or judgment. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

Exhibit B.

28. Even though Exhibit A, mailed on October 18, 2017, assured the debtor that the payment "Due By Date" was November 8, 2017, Credence mailed Exhibit B on October 20, 2017, just days later, and almost three weeks before the "Due By Date" stated in Exhibit A.

29. The consumer would be confused as to whether Credence's debt collection letter, received just days after the AT&T statement, was legitimate.

30. The validation notice states that the consumer has 30 days after receiving the notice to dispute the debt, or any portion thereof.

31. For example, Plaintiff may have wished to dispute a portion of the balance because he wanted to confirm that the $12.08 credits stated in Exhibit A were accurate, and that his account was not entitled to credits in some greater amount.

32. However, because Credence attempted to collect the balance before the due date in the account statement, the consumer would feel pressed to dispute the account as quickly as possible.

33. The consumer would assume that it would be pointless to mail a written dispute because the "due by date" would have passed by the time the dispute was processed and the debt collector had responded.

34. Instead, the consumer would feel pressed to attempt to dispute the debt by telephone.

35. Whether a consumer may effectively dispute a debt by telephone is an open question in the Seventh Circuit. *See, e.g., Smith v. GC Servs. L.P.*, 2017 U.S. Dist. LEXIS 93710, at *7-8 (S.D. Ind. June 19, 2017).

36. Even assuming the consumer can effectively communicate the dispute by telephone, the FDCPA assigns lesser rights to debtors who dispute their debts orally than debtors who dispute their debts in writing. *See, e.g., Clark v. Absolute Collection Serv.*, 741 F.3d 487, 491 (4th Cir. 2014); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013); *Camacho v. Bridgeport Fin.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

37. Mailing the validation notice just days after the consumer's final statement intimidates consumers and impliedly directs them to communicate disputes by telephone rather than in writing. *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v.

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002).

### *Credence's November 27, 2017 and January 9, 2018 Debt Collection Letters*

38. On or about November 27, 2017, Credence mailed a debt collection letter to Plaintiff regarding an alleged debt owed to AT&T. A copy of the letter is attached to this complaint as Exhibit C.

39. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

40. Upon information and belief, Exhibit C is a form debt collection letter used by Credence to attempt to collect alleged debts.

41. Exhibit C contains the following:

> We previously sent you a letter regarding a current balance to AT&T Uverse and our records reflect the amount remains unpaid. We are again providing you with notice of your delinquent debt and an opportunity to resolve your account. Remit the balance due since there is a potential overshadowing challenge. Remit the amount in the Current Balance above or contact this office to establish a reasonable payment plan.

Exhibit C.

42. Exhibit C is misleading and confusing to the unsophisticated consumer.

43. Exhibit C instructs the consumer to "remit the balance due since there is a potential overshadowing challenge."

44. The statement in Exhibit C that the consumer should "remit the balance due since there is a potential overshadowing challenge" is false, deceptive, misleading, and confusing to the unsophisticated consumer.

45. The unsophisticated consumer would have no idea what "a potential overshadowing challenge" could mean.

46. The unsophisticated consumer would understand the instruction to "remit the balance due since there is a potential overshadowing challenge" to mean that the debt collector or the creditor would "ramp up" collection efforts if the debtor did not "remit the balance due."

47. The unsophisticated consumer would understand the instruction to "remit the balance due since there is a potential overshadowing challenge" to mean that the debt collector or the creditor planned to sue him if he did not "remit the balance due."

48. The unsophisticated consumer would understand the instruction to "remit the balance due since there is a potential overshadowing challenge" to mean that, because AT&T referred the debt to Credence, the consumer had lost any claims against AT&T for potential account adjustments and credits, as well as any defenses to payment of the debt.

49. On or about January 9, 2018, Credence mailed another debt collection letter to Plaintiff regarding an alleged debt owed to AT&T. A copy of the letter is attached to this complaint as Exhibit D.

50. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

51. Upon information and belief, Exhibit D is a form debt collection letter used by Credence to attempt to collect alleged debts.

52. With the exception of the date, Exhibit D is virtually identical to Exhibit C.

53. The unsophisticated consumer would interpret the threat "a potential overshadowing challenge" to be a threat of imminent legal action.

54. Credence is an out-of-state debt collector and is not a law firm.

55. Credence has no ability to sue Plaintiff to collect an alleged debt owed to AT&T. AT&T would be the real party in interest in any lawsuit.

8

56. Moreover, Credence has no insight into or control over AT&T's litigation strategies.

57. Upon information and belief, Credence had no knowledge whether AT&T intended to sue Plaintiff or any class member to collect the alleged debts.

58. A search of CCAP reveals that, as of February 19, 2018, AT&T had not sued Plaintiff to collect the alleged debt identified in <u>Exhibits A-D</u>.

59. Upon information and belief, when Credence mailed <u>Exhibit C</u>, neither Credence nor AT&T intended to sue Plaintiff for the balance in question or otherwise ramp up collection efforts.

60. Plaintiff was confused by <u>Exhibits A-D</u>.

61. The unsophisticated consumer would be confused by <u>Exhibits A-D</u>.

62. Plaintiff had to spend time and money investigating <u>Exhibits A-D</u>.

63. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of <u>Exhibits A-D</u>.

### *The FDCPA*

64. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations

9

of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created

a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

65. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

66. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

67. 15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

68. 15 U.S.C. § 1692e(6)(A) specifically prohibits "The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to payment of the debt."

11

69. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

70. 15 U.S.C. § 1692f generally prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."

71. 15 U.S.C. § 1692g(b) states, in part:

> (b) **Disputed debts**
> …
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

72. Failure to provide the correct validation notice pursuant to 15 U.S.C. § 1692g(a) is a *per se* violation of the FDCPA. No analysis of materiality of the error or omission is required. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

73. The debt collector must make the 15 U.S.C. § 1692g disclosures in a non-confusing manner. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

74. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006):

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a

12

letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.

### The WCA

75. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

76. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

77. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

78. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

79. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

13

80. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

81. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

82. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

83. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

84. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

85. The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in

14

conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

86. The WCA specifically prohibits a debt collector from "Threaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt." Wis. Stat. § 427.104(1)(L).

**COUNT I – FDCPA**

87. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

88. Exhibit A, mailed on October 18, 2017, states that the "due by date" is November 8, 2017.

89. Exhibit A implies to the consumer that the account would not be "sent for further collections" as long as the balance was paid by the "due by date."

90. Credence mailed Exhibit B, which attempted to collect the balance in full, on October 20, 2017, just two days after AT&T mailed Exhibit A and almost three weeks before the "due by date" stated in Exhibit A.

91. Mailing Exhibit B prior to the "due by date" stated in Exhibit A is deceptive and confusing to the unsophisticated consumer.

15

92. Mailing <u>Exhibit B</u> prior to the "due by date" stated in <u>Exhibit A</u> impliedly directs consumers to dispute their debts by telephone in order to ensure that the dispute is communicated and give the debt collector, and the creditor, a chance to respond before the "due by date."

93. <u>Exhibit B</u> is confusing, deceptive, and/or misleading to the unsophisticated consumer, and is an unconscionable attempt to collect a debt.

94. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692g(a), and 1692g(b).

## COUNT II -- FDCPA

95. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96. <u>Exhibits C and D</u> threaten the consumer with an impending "potential overshadowing challenge."

97. <u>Exhibits C and D</u> threaten litigation against the recipient.

98. <u>Exhibits C and D</u> threaten that the consumer has lost any potential claims against AT&T, including claims for further account adjustments and credits, as well as any potential defenses to the payment of the debt.

99. Credence, in fact, had no authority or ability to sue Plaintiff to collect a debt allegedly owed to AT&T.

100. AT&T has not sued Plaintiff almost six months after the date on <u>Exhibit A</u>.

101. The referral of the debt to Credence for collection did not affect any of Plaintiff's potential claims or defenses with respect to this debt.

102. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(6)(A), 1692e(10), and 1692f.

## COUNT III – WCA

103. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

104. Exhibit A, mailed on October 18, 2017, states that the "due by date" is November 8, 2017.

105. Exhibit A implies to the consumer that the account would not be "sent for further collections" as long as the balance was paid by the "due by date."

106. Credence mailed Exhibit B, which attempted to collect the balance in full, on October 20, 2017, just two days after AT&T mailed Exhibit A and almost three weeks before the "due by date" stated in Exhibit A.

107. Mailing Exhibit B prior to the "due by date" stated in Exhibit A is deceptive and confusing to the unsophisticated consumer.

108. Mailing Exhibit B prior to the "due by date" stated in Exhibit A impliedly directs consumers to dispute their debts by telephone in order to ensure that the dispute is communicated and give the debt collector, and the creditor, a chance to respond before the "due by date."

109. Exhibits C and D threaten the consumer with an impending "potential overshadowing challenge."

110. Exhibits C and D threaten litigation against the recipient.

111. Exhibits C and D threaten that the consumer has lost any potential claims against AT&T, including claims for further account adjustments and credits, as well as any potential defenses to the payment of the debt.

112. Credence, in fact, had no authority or ability to sue Plaintiff to collect a debt allegedly owed to AT&T.

113. AT&T has not sued Plaintiff almost six months after the date on <u>Exhibit A</u>.

114. The referral of the debt to Credence for collection did not affect any of Plaintiff's potential claims or defenses with respect to this debt.

115. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(L).

## CLASS ALLEGATIONS

116. Plaintiff brings this action on behalf of four Classes.

117. Class I consists of (a) all natural persons in the United States of America (b) who were sent an account statement in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) and to whom Credence subsequently sent a collection letter in the form represented by <u>Exhibit B, C or D</u> to the complaint in this action, (d) where Credence mailed its initial collection letter containing the validation notice prior to the "due by date" stated in the account statement, (e) where the debt was incurred for personal, family or household purposes, and (f) that was not returned by the postal service.

118. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent an account statement in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) and to whom Credence subsequently sent a collection letter in the form represented by <u>Exhibit B, C or D</u> to the complaint in this action, (d) where Credence mailed its initial collection letter containing the validation notice prior to the "due by date" stated in the account statement, (e) where the debt was incurred for personal, family or household purposes, and (f) that was not returned by the postal service.

119. Class III consists of (a) all natural persons in the United States of America (b) to whom Credence mailed a debt collection letter, (c) which letter represented to the debtor that

"there is a potential overshadowing challenge," (d) where the debt was incurred for personal, family or household purposes, and (e) that was not returned by the postal service.

120. Class IV consists of (a) all natural persons in the State of Wisconsin (b) to whom Credence mailed a debt collection letter, (c) which letter represented to the debtor that "there is a potential overshadowing challenge," (d) where the debt was incurred for personal, family or household purposes, and (e) that was not returned by the postal service.

121. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

122. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

123. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

124. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

125. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

126. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 22, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com